NORTH AMERICAN TRADING & TRANSPORTATION CO. v. BYRNE et al.

(Fourth Division. Fairbanks. January 31, 1910.)

No. 1115.

1. BILLS AND NOTES (§ 129*)—NOTE PAYABLE ON DEMAND.
   A note written "On demand on or before September 15, 1902, after date I promise to pay," is a demand note, and is due and payable immediately.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 283–292; Dec. Dig. § 129.*]

2. LIMITATION OF ACTIONS (§ 48*)—NOTE PAYABLE ON DEMAND.
   A note made on May 27, 1902, was payable "on demand on or before September 15, 1902, after date I promise to pay," etc., was sued on September 15, 1908. The statute of limitations barred the recovery after six years. An answer pleading the statute was demurred to, but the demurrer was overruled, and the note was held barred by the statute.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 259–265, 351; Dec. Dig. § 48.*]

This is an action on a promissory note. The plaintiff alleges that on or about the 27th day of May, 1902, in the town of Dawson, in the Yukon territory, the defendants and each

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

of them executed and delivered to the plaintiff their and each of their promissory note as follows:

"$1,440.61.                              Dawson, Y. T., May 27, '02.

"On demand on or before September 15, 1902, after date, I promise to pay to the order of North American Transportation and Trading Company $1,440.61 at its office in Dawson. Value received, interest at the rate of eighteen per cent. per annum from July 1, 1902, until paid."

The action was begun by filing a complaint in this court on the 15th day of September, 1908. The record discloses the fact that only the defendant Byrne was served with summons in the cause, and that on the 13th day of October Byrne appeared and demurred to the complaint on the grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action; and (2) that it appears by the complaint that the plaintiff did not commence its action within the time prescribed by law, and that the cause of action is barred by the statute of limitations.

Thereafter, and on the 23d day of April, 1909, the demurrer was overruled by this court, and on the 28th day of July, 1909, the defendant Byrne answered, and, among other things, alleged: (1) That the cause of action set forth in the complaint did not accrue within six years before the commencement of the action, and is therefore barred by the statutes of Alaska; (2) that said action is barred by lapse of time under the laws of the Yukon territory wherein said note was made and executed; and (3) that the plaintiff is a foreign corporation and has failed and neglected to comply with the provisions of the laws of Alaska respecting the filing of articles of incorporation and other corporate papers with the secretary of the district and the clerk of the court in the division wherein such corporation is doing business.

On the 24th day of July, 1909, the plaintiff demurred to the answer, and at the same time filed a motion to strike, on the ground that the answer does not state facts sufficient to constitute a defense.

Chas. E. Taylor, for plaintiff.
Leroy Tozier, of Fairbanks, for defendants.

LYONS, District Judge (after stating the facts as above). With reference to the motion to strike, it is apparent it should be overruled as to the first paragraph of the answer, for the reason that the question sought to be raised by the motion can only be raised by demurrer. It is also apparent that the motion should be sustained as to the second paragraph of the answer, for the reason that the limitation in the jurisdiction, where the note in suit was executed, seems to be immaterial, especially since the limitation stated in the answer as obtaining in the foreign jurisdiction is the same as that prevailing in this jurisdiction, to wit, six years from the date of the accrual of the action or the maturity of the note. The motion is therefore sustained as to the second paragraph of the answer. It is also obvious that the motion should be sustained as to the third paragraph of the answer, for the reason that the law of Yukon territory, as alleged in said paragraph to obtain in that jurisdiction, in effect that only 5 per centum per annum can be collected when no interest is provided by agreement of the parties or fixed by law, is wholly immaterial as a defense here, since there was an agreement of the parties for the payment of 18 per centum per annum from July 1, 1902, until the note is paid.

The serious question in the case, however, is raised by the demurrer on the ground that the answer does not state facts sufficient to constitute a defense to the matters set forth in plaintiff's complaint; and the first, and in fact the only, portion of the answer which it is deemed necessary to discuss is paragraph 1 thereof; for, under the view the court takes of the pleadings, a decision on that point will dispose of the whole controversy. The question involved is: When did the note set out in the complaint mature? Or when did the right of action thereon accrue in favor of the plaintiff? An answer to that question involves two propositions: (1) Is the note in suit equivalent to a demand note so far as the date of maturity or the maturing of a right of action thereon is concerned? And (2) if it is a demand note, when does the right of action accrue on such note, and when does it expire by limitation?

1. In approaching a consideration of the first question, it is difficult to ascertain, or even to imagine, what was the purpose of the makers and payee therein in inserting the words "on or before September 15, 1902," for every lawyer who has given the matter any consideration will concede that the maker of a demand note has a right to pay the same at any time after delivery, and the payee in a demand note likewise has the right to demand payment thereof at any time after delivery. For that reason, it is difficult to construe the phrase above quoted, as the same appears in the note in suit. It is apparent from the language used, however, that the makers had a right to pay the note at any time after delivery and before September 15, 1902; and of course it goes without saying they had a right to pay it any time thereafter, because it was then certainly an overdue note. The result is that the makers had the right to pay the note at any time from its date or delivery; but it would have enjoyed the same privilege, it must be conceded, under an ordinary demand note.

But what is the situation as to the payee? Does the insertion of the words "on or before September 15, 1902," take away from it the right to demand payment immediately, which of course he would have the right to do if those words were not inserted? It hardly seems possible that the language can be construed to deprive the payee of the right to demand payment at any time after delivery, for such language can convey no other meaning than that the payee should have the right to demand payment of the note on September 15, 1902, and also the right to demand payment on or before that date, which must mean any time before that date, and as early as the very day of the execution and delivery of the note. Thus, a note payable on demand the 1st day of January next has been held to be payable immediately, but to draw interest only from January 1st (1 Randolph on Com. Paper [2d Ed.] § 118); the fixing of the date being held in that case as a limitation on the time the note should draw interest.

But the words "on demand," having a technical significance, are held to refer to and explain when the note matures. Therefore the court held the insertion of the words "January

next," following the words "on demand," did not make it any the less a demand note.

"Where commercial paper is payable on or before a fixed time, the maker simply has an option to pay it before the time fixed, and the paper does not mature until after the expiration of that time. The same is true of an instrument payable by or on a certain date, or within a certain time, and of an instrument payable in a certain time but redeemable before that time. The holder cannot require payment or maintain an action until the expiration of the time fixed, unless he is given such an option; and a transferee before the time fixed is entitled to protection as a transferee before maturity." 7 Cyc. 884.

That is, any expression in a note, such as "on or before" a certain date, or phrases of equivalent meaning, have the legal significance of giving to the maker the option to pay the note on the date named or any date prior thereto. Hence, if the words "on demand" had not been used in the note described in the complaint in this case, it is apparent that the makers would still have the right to pay the note on September 15, 1902, or at any time after the date and delivery of the note; but the payee could not force the collection or institute an action on said note until the 15th day of September, 1902. Therefore it is clear that the insertion of the words "on demand" were calculated and intended by the parties to give the plaintiff some right with respect to the time of commencement of an action which it would not have enjoyed without the insertion of those words. And if the words "on demand" gave plaintiff the right to institute an action before September 15, 1902, then it must follow that the insertion of such words gave it the right to institute the action any time after the date and delivery of the note, which would constitute it an ordinary demand note.

I am therefore unable to discover any reason why the phrase "on or before September 15, 1902," in any wise limits the legal significance of the words "on demand."

The inquiry may then be made: What was the purpose of the parties in making use of the phrase "on or before September 15, 1902"? We answer that it can be only a matter of conjecture. It may be that the makers had some doubt as to their right to pay the note immediately, and thereby stop in-

terest; and they may have insisted on the insertion of such words so as to be guaranteed the privilege of paying the note at any time they desired, and as soon as it should suit their convenience on or before September 15, 1902. Such may or may not have been the purpose of the language; and it is evident to me that any attempt to explain or to account for the purpose the parties intended at the time they inserted the words would be the merest speculation on the part of one endeavoring to interpret their meaning. Suffice it to say, it does not seem possible that the insertion of the proviso "on or before September 15, 1902," in the note in suit could have been made for the purpose of limiting the legal significance of the words "on demand," and for that reason the court holds that the note sued on, so far as the date of maturity and the time a right of action accrued thereon are concerned, is equivalent to an ordinary demand note.

2. The question then arises as to the date of maturity of a demand note, and when the right of action accrues thereon. While there is some slight diversity of opinion concerning that matter, the great weight of authority is to the effect: (1) That, on a demand note, no demand or request to pay is necessary before commencing action thereon; and (2) that, since no demand is necessary, the right of action accrues immediately after the delivery of such note.

"The statute of limitations begins to run from the very day the right of action accrues. Thus, upon a bill or note payable at so many days from date, it begins to run from the day of payment and not from the day of date, but the day of maturity is excluded in the computation of time. If payable at sight, the statute runs from sight. If so many days after sight, or after certain events, then from the time named after sight, or after the events have happened. If the instrument be payable on demand, the statute begins to run immediately, as payment might be immediately demanded or suit brought without any previous demand. * * *" 2 Daniel on Neg. Inst. § 1215.

See, also, 1 Daniel on Neg. Inst. §§ 88, 89.

"Although there is some conflict in the authorities, the law is well settled, in most jurisdictions, that a promissory note payable on demand, with or without interest, is due immediately, and that the statute of limitations runs in favor of the maker from the date of the execution of the instrument. The same rule applies to due bills." 25 Cyc. p. 1100.

See, also, numerous cases cited by the foregoing authority from many states, as well as from the federal courts, holding the same doctrine.

"Some courts have held that paper payable on demand does not become due until a demand is made, so that a demand is necessary before an action can be maintained and before the statute will begin to run. And some seem to hold that payment must be demanded in what is a reasonable time under all the circumstances, and that the statute of limitations will run after the expiration of such time."

Most of the courts, however, have held that paper payable on demand is due immediately, so an action may be brought at any time after date and delivery of the note without any further demand than the suit, and so that the statute of limitations begins to run from its date; and this rule is not affected by statutes declaring demand paper to be overdue after a certain time from its date, and which are intended only to affect indorsers, purchasers, etc. This rule may not apply where there is something on the paper, or in the circumstances under which it is given, to show that it was not the intention that it should become due immediately. Some courts have held demand paper not to be due immediately, because of a provision as to interest, on the ground that such a provision raised a presumption that the paper was intended not to be due immediately; but this is contrary to the weight of authority. 7 Cyc. p. 847; 1 Randolph on Com. Paper, § 117; Wheeler v. Warner, 47 N. Y. 519, 7 Am. Rep. 478; Howland v. Edmonds, 24 N. Y. 307; Herrick v. Woolverton, 41 N. Y. 581, 1 Am. Rep. 461; 3 Randolph on Com. Paper, § 1607; 2 Daniel on Neg. Inst. p. 245; Cousins v. Partridge, 79 Cal. 224, 21 Pac. 745; O'Neill v. Magner, 81 Cal. 631, 22 Pac. 876, 15 Am. St. Rep. 88; Bartlett v. Rogers, 3 Sawyer, 62, Fed. Cas. No. 1079; Bell v. Sackett, 38 Cal. 407; Niagara Bank v. McCracken, 18 Johns. (N. Y.) 493; Paine v. Cent. Vermont R. R. Co., 118 U. S. 152, at 160, 6 Sup. Ct. 1079, 30 L. Ed. 193.

It may be contended that the phrase found in the note sued upon in this case, "interest at the rate of eighteen per cent. per annum from July 1, 1902, until paid," negatives the inference that either party intended that the note should be

due immediately upon delivery; that is, that they intended that the note was to draw some interest, notwithstanding the fact that interest would not begin to accrue until more than a month after the delivery of the note; and therefore it may be contended that the parties intended that the note should not be overdue until at least after the date on which it commenced to bear interest, to wit, July 1, 1902. Some of the courts have held demand paper not to be due immediately, because of a provision as to interest, on the ground that such a provision raises a presumption that the paper was not intended to be due immediately; but this is contrary to the weight of authority. 7 Cyc. supra.

It will be observed, on an examination of the authorities cited to the contrary of those above enumerated, they are all old cases; but it is manifestly immaterial which view of the question, to which reference is last made, is taken by the court in this instance, for the reason that, in any event, the note began to draw interest July 2, 1902. And even if it be held that the parties did not intend the note in suit to be due until after it had borne interest, in either event it would be overdue before September 15, 1902. If a demand were necessary before July 1, 1902, in order to begin the tolling of the statute before that date, certainly under the authorities no demand was necessary after the 1st of July, 1902, to make the statute operative. For the note in suit is clearly a demand note; and, while the date it commenced to draw interest might indicate that the parties did not intend the action to accrue without demand before July 1, 1902, there is certainly nothing in the language of the note to justify the inference that the right of action did not accrue immediately after the 1st of July, without demand.

The court concludes, therefore, that more than six years have elapsed between the accrual of the right of action on the note sued upon in this case and the date of the commencement of the action herein; and for that reason the demurrer to the answer must be overruled.

Demurrer overruled.